1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   In re: NATASHA MORA,                    No.  2:25-cv-2299-TLN-SCR

12                 Petitioner,

13        v.                                 ORDER AND

14   UNITED STATES BANKRUPTCY               FINDINGS AND RECOMMENDATIONS
     COURT FOR THE EASTERN DISTRICT
15   OF CALIFORNIA, SACRAMENTO
     DIVISION,
16
                  Respondent,
17
     and
18
     CHRISTOPHER M. KLEIN, United States
19   Bankruptcy Judge,

20                 Real Party in Interest

21

22        Petitioner filed a Petition for Writ of Mandamus and Request for Emergency Relief

23   ("Mandamus Petition") (ECF No. 1), as well as a Motion for a Temporary Restraining Order

24   ("TRO Motion") (ECF No. 3).  Because Petitioner is proceeding pro se in this matter, it is

25   referred to the undersigned for the issuance of Findings and Recommendations pursuant to Local

26   Rule 302(c)(21) and 28 U.S.C. §636(b).

27        Petitioner is attempting to undo a series of orders issued by bankruptcy court, state court,

28   and another district court concerning a luxury residence at 6389 Castejon Drive, La Jolla,

                                            1

California (the "Residence").  Petitioner challenges Bankruptcy Judge Christopher Klein's denial of her motion for derivative standing in the Chapter 11 bankruptcy proceedings concerning a corporate entity of which she is a shareholder.  ECF No. 1 at 54-57.  Petitioner also challenges Judge Klein's sanctions order prohibiting her from filing suit in any forum nationwide without permission until May 7, 2027.  *See* ECF No. 1 at 44.  She argues that the sanctions order is unduly prohibitive and interferes with her right to protect her interest in the Residence.  ECF No. 1 at 13.

Through the Mandamus Petition, Petitioner seeks (1) disqualification of Judge Klein from future proceedings, (2) an order vacating his sanctions order, (3) authorization for Petitioner to proceed with federal filings needed to protect her interests in the Residence, (4) a TRO or preliminary injunction preventing the auction of her personal property still in the Residence, (5) an order vacating Judge Klein's denial of derivative standing, and (6) a stay on any enforcement action related to the Trustee's Deed Upon Sale recorded for the Residence on September 13, 2024.  ECF No. 1.

Through the TRO Motion, Petitioner seeks an injunction against any auction, transfer, disposal, or conveyance of the Residence and Petitioner's personal property, as well as an order directing Respondents and alleged real parties in interest to preserve the status quo pending further order of the Court.  ECF No. 3 at 12.

At bottom, and as described in more detail below, this action is a meritless collateral challenge to other courts' orders for which Petitioner never sought appellate review.  The undersigned recommends that the Mandamus Petition be denied because it fails to demonstrate clear error by the bankruptcy judge and because the law provides for appellate review of the bankruptcy judge's challenged orders, among other reasons.  Moreover, the undersigned recommends that the TRO Motion and the TRO sought as part of the Mandamus Petition be denied because those motions seek relief against entities that are not parties to this action and because they fail to make an adequate showing on the merits.[1]

---

[1]  Petitioner also filed a motion for leave to proceed in forma pauperis and submitted the required affidavit.  ECF No. 2; *see* 28 U.S.C. § 1915(a)(1).  That motion will be granted.

# I.    INTRODUCTION

### A.  Documentary Evidence and Litigation History

Petitioner and those close to her have engaged in a dizzying array of litigation in an attempt to maintain (and regain) possession of the Residence.  Only some of that litigation history is recounted here.  For present purposes, that history begins with Chapter 11 bankruptcy proceedings commenced in December 2023 in U.S. Bankruptcy Court for the Eastern District of California by Bula Developments, Inc. ("Bula"), *In re Bula Developments, Inc.*, Case No. 2023-24619-C-11 (the "*Bula Developments* Chapter 11 Case").  ECF No. 1 at 26, 55.  Petitioner asserts she is a Chapter 13 Debtor, Pro Se Creditor, and Equity Stakeholder of Bula.  *Id.* at 70.  Various filings state that Petitioner, her spouse, and her parents are each 25% shareholders of Bula (collectively, the "Shareholders").  *See, e.g, id.* at 26.

Bula's property included the Residence, which it constructed.  *Id.* at 49, 52.  A notice of default and election to sell the Residence was recorded in May 2022.  *Id.*  The Residence was appraised at a value of $18,034,000 in May 2023.  *Id.* at 52.  However, the Residence "has been rendered unusable by virtue of land subsidence issues following collapse of a retaining wall allegedly attributable to faulty engineering and/or construction."  *In re Bula Developments, Inc.*, 666 B.R. 922, 924 (Bankr. E.D. Cal. 2025).

In August 2024, Shareholders filed a motion for derivative standing to pursue claims on behalf of the bankruptcy estate, notwithstanding the appointment of Walter Dahl ("Mr. Dahl") as a Chapter 11 trustee.  *Id.* at 26, 54, 70.  On August 23, 2024, Judge Klein denied the motion.  *Id.* at 54, 57.  He found that the Shareholders' decision to file the Chapter 11 case in this District was suspicious, given that the property was in the Southern District of California.  *Id.* at 55.  They then failed to prosecute this case, only hiring an attorney after an Order to Show Cause regarding dismissal was issued.  *Id.*  Mr. Dahl was appointed as trustee after five months of inactivity and as a response to creditors' stay relief motions, which he did not oppose.  *Id.* at 55-56.  Only then did Shareholders file the motion for derivative standing, which Mr. Dahl opposed, all while Petitioner lived in the Residence rent-free.  *Id.*  Judge Klein concluded that Mr. Dahl was a competent trustee who could handle all relevant matters, and that the motion was an effort to delay sale of

3

1  the Residence so Petitioner could continue to live in it rent-free.  *Id.* at 56-57.  Petitioner did not

2  appeal the order denying derivative standing.  *Id.* at 28.

3       The Trustee's Sale of the Residence occurred on August 26, 2024.  *Id.* at 28.  On

4  September 8, 2024, counsel for Shareholders submitted a Formal Notice of Intent to Bid in the

5  sale.  *See id.*  The letter invoked the right of an eligible tenant-buyer under California Civil Code

6  § 2924m ("Section 2924m") to place a bid within 45 days before any sale of the Residence would

7  be deemed final.  *Id.*[2]  An accompanying Affidavit of Compliance asserted under penalty of

8  perjury that all Shareholders were occupying the residence "under a rental or lease agreement

9  entered into as the result of an arm's length transaction with the mortgagor or trustor."  *Id.*

10       On September 13, 2024, S.B.S. Trust Deed Network, as trustee for Bula, had a deed (the

11  "Deed") recorded for the Residence.  *Id.* at 49.  This Deed conveyed 6.6667% interest to five

12  different entities, including Fine Capital Investments, Inc. ("Fine"), and the remaining 66.665%

13  interest to Black Horse Capital Inc. ("Black Horse"), for a total of $972,836.51.  *Id.* at 49-50; *see*

14  *also id.* at 65-67 (describing the scheduled decrease of the Residence's asking price as a "Dutch

15  Auction").  In a subsequent unlawful detainer action in San Diego County Superior Court, *Black*

16  *Horse Capital v. Bula Developments Inc.*, No. 24UD012825C, Petitioner and her husband

17  asserted that their right to bid on the Residence under Section 2924m was infringed.  *Id.* at 29-30.

18  The court rejected this argument in December 2024, holding that because the Shareholders were

19  owners of trustor Bula, they were both lessors and lessees of the Residence and could not have

20  negotiated the lease at arm's length.  *Id.* at 30.  The state appellate court denied mandamus relief

21  to the Shareholders.  *Id.*

22       On December 31, 2024, Petitioner filed a Chapter 13 action "for the purpose of

23  interposing the bankruptcy automatic stay" in the Southern District of California.  *Id.*  On

24  February 6, 2025, that action was transferred to this District under 28 U.S.C. § 1412 and Federal

25  Rule of Bankruptcy Procedure 1014(b), at which point it became *In re Natasha Nisha Mora*, Case

26

27  [2]  A tenant buyer is an "eligible bidder" under this section only if, *inter alia*, they are "occupying
the real property under a rental or lease agreement entered into as the result of an arm's-length
transaction with the mortgagor or trustor" and are not "the mortgagor or trustor, or the child,

28  spouse, or parent of the mortgagor or trustor."  Cal. Civ. Code §§ 2924m(a)(2)(B), (C), (a)(3)(A).

No. 25-20575-C13 (the "*Mora* Chapter 13 Case"). *Id.* at 32-33. On April 16, 2025, Judge Klein dismissed the *Mora* Chapter 13 Case after Petitioner did not appear at a hearing on Mr. Dahl's motion to dismiss the action, and after Petitioner had failed to follow multiple requirements under Chapter 13. *Id.* at 33-34. Judge Klein concluded that Petitioner never sought an adjustment of her debts, the proper purpose of such an action, but rather used it to thwart the lockout from the Residence pursuant to the state court judgment in *Black Horse Capital*. *Id.* at 34.

On January 6, 2025, Petitioner filed a civil action in the Southern District of California, Case No. 3:25-cv-00017-RBM-AHG, with an *ex parte* application to rescind a postjudgment lockout from the Residence, based on a Fourteenth Amendment due process claim. *Id.* at 30. The district court dismissed that action on January 23 under the *Rooker-Feldman* doctrine as a prohibited challenge to the unlawful detainer judgment in *Black Horse Capital*. *Id.* at 31. It also warned Petitioner that she may have violated Federal Rule of Civil Procedure 11 in three respects, including by filing a legally meritless complaint for an improper purpose, and that doing so again could result in sanctions. *Id.* at 32 (citing *Mora v. Black Horse Capital Inc.*, 2025 WL 255459, at *5-6 (S.D. Cal. 2025)).

On January 17, 2025, the Shareholders filed an Adversary Proceeding against S.B.S., Fine, and Black Horse, *Mora et al. v. S.B.S. Trust Deed Network et al*, within the original *Bula Developments* Chapter 11 Case, to invalidate the Deed and set aside the unlawful detainer judgment against Petitioner and her husband. ECF No. 1 at 24, 31. On January 30, the defendants in that action moved for sanctions under Federal Rule of Bankruptcy Procedure 9011(c)(2). *Id.* at 24, 33. On May 7, 2025, six days after granting a separate motion to dismiss the action, Judge Klein granted the motion for sanctions. *Id.* at 35, 44.

In the order sanctioning the Shareholders, Judge Klein agreed with the Superior Court in *Black Horse* that Shareholders had no right to bid on the residency 45 days after the Trustee's Sale of the Residence. *Id.* at 29. Aside from all four Shareholders owning Bula and therefore being trustors, this inherently made them both lessors and lessees on any lease for the Residence and barred the lease from being an arm's-length transaction. *Id.* at 29, 37. Because the lease would have made this obvious, Judge Klein found credible S.B.S.'s assertion that Shareholders

1    had not attached a copy to the September 2024 Notice of Intent to Bid, making it incomplete for

2    Section 2924m purposes.  *Id.* at 36-37.  Either way, the obviousness of Shareholder's ineligibility

3    under Section 2924m rendered the complaint frivolous and supported S.B.S's argument that it

4    was filed for improper purposes.  *Id.* at 37.  Judge Klein concluded that when combined with

5    Shareholders' larger litigation history, including the state court's unlawful detainer judgment in

6    *Black Horse Capital* and the August 2024 finding that the Shareholders cannot assert claims on

7    Bula's behalf, it was apparent that Adversary Proceeding within the *Bula Developments* Chapter

8    11 Case was both baseless and filed for an improper purpose.  *Id.* at 37-40.

9        After awarding the defendants attorney's fees, Judge Klein found that Petitioner had

10   engaged in a campaign of aggressive litigation since 2022, and that "[e]nough is enough."  *Id.* at

11   41-42.  Accordingly, he decided that a two-year prefiling requirement was a fair way to curtail

12   further frivolous litigation on the matter.  *Id.* at 43.  Invoking the power of bankruptcy courts to

13   control their own dockets, he held that Shareholders could not file "any new case or adversary

14   proceeding in any federal court venue within two years of the date this order is entered on the

15   docket" without permission from either him or this District's Chief Bankruptcy Judge.  *Id.*  Not

16   complying with this requirement would be treated as contempt.  *Id.* at 44.  Neither Petitioner nor

17   the other shareholders appealed the sanctions order.

18       On July 15, 2025, Petitioner and her husband received notice that they had left various

19   personal property in the Residence and had until August 4 to reclaim it or pay moving and storage

20   costs.  *Id.* at 60.  In her response the following day, Petitioner argued that her dispossession of the

21   Residence was without due process, and she demanded the preservation and accounting of all

22   personal property.  *Id.* at 61-63.

23       On July 31, 2025, Petitioner and her spouse moved to disqualify Judge Klein under 28

24   U.S.C. § 144, which reassigns proceedings from one judge to another upon sufficient showing

25   that the currently presiding judge has a personal bias or prejudice.  *Id.* at 46.  Although Petitioner

26   requested that Chief Bankruptcy Judge Fredrick Clements rule on this motion, Judge Klein denied

27   the motion himself on August 4, 2025.  *Id.* at 46, 70-71.  He held that 28 U.S.C. § 144 does not

28   apply to bankruptcy judges.  *Id.* at 46 (citing *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221

(9th Cir. BAP 1996)).  In any case, Judge Klein had no extrajudicial contacts with Petitioner or other relevant parties, and instead learned everything he knew about Petitioner and her spouse through their proceedings before him.  ECF No. 1 at 46.  Nor did he find the purported personal bias – that Mr. Dahl was the son of the late Chief Bankruptcy Judge Loren Dahl ("Judge Dahl"), a judge in the 1990s for whom another current bankruptcy judge in this District clerked – sufficient grounds for disqualification.  *Id.*

On August 4, 2025, Petitioner and her husband, in the *Mora* Chapter 13 Case, sought a TRO restraining the sale of the Residence.  *Id*. at 19 (Adv. Pro. 2025-2098).  On that same date, Judge Klein denied the request for a TRO.  Judge Klein incorporated by reference Petitioner's litigation history, including seven matters in Bankruptcy Court and her collateral attack on the unlawful detainer action in the Southern District of California.  In denying the TRO, Judge Kein found that, "the fatal flaw is there has been no showing of likelihood of success on the merits." *Id*. at 21.  Petitioner did not appeal of the order denying the TRO.  Rather, on August 21, 2025, Petitioner sought to voluntarily dismiss the *Mora* Chapter 13 Case.  *See* Case No. 25-20575-C-13, ECF No. 73.

**B.  Pleadings and Requested Relief**

Petitioner initiated this action on August 13, 2025 by filing the Mandamus Petition.  The Petition argues that Judge Klein's finding that Petitioner lacks standing in the Chapter 11 proceedings is based on the appointment of Mr. Dahl as Chapter 11 trustee, despite his "repeated failure and refusal to take any action to protect the property or pursue claims."  ECF No. 1 at 5. Since the denial of standing, Judge Klein has permitted post-petition enforcement actions, which should be void due to the automatic stay under 11 U.S.C. § 362(a).  *Id.* at 11 (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)).  This has included the sale of the Residence, an $18 million property, for less than $1 million due in part to suppression of certified appraisals of the Residence's true value.  *Id*. at 11.

As to the denial of the motion to disqualify Judge Klein, the Petition maintains that the "judicial lineage" linking Judge Klein to Mr. Dahl's father, former Chief Bankruptcy Judge Dahl, compels recusal under 28 U.S.C. § 455(a).  *Id.* at 10-11.  Although Petitioner moved for

7

1    disqualification under 28 U.S.C. § 144, and she does not dispute Judge Klein's holding that it

2    does not apply to bankruptcy judges, the *pro se* motion should have been interpreted liberally as

3    one also brought under 28 U.S.C. § 455.  *Id.* at 8, 10.

4         As to the prefiling restriction on any action in any federal court, the Petition asserts such

5    an overbroad ban is unconstitutionally broad and was entered without an evidentiary hearing.  *Id.*

6    at 12 (citing *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057-59 (9th Cir. 2007)).  That

7    only the judge whom Petitioner moved to disqualify and the Chief Bankruptcy Judge of this

8    District, who are in the same "judicial lineage" as Judge Dahl, makes the restriction "self-

9    reinforcing."  ECF No. 1 at 12-13 (citing *Liljeberg* v. *Health Services Acquisition Corp.,* 486 U.S.

10   847, 860 (1988)).  In any case, even a vexatious litigant cannot be completely foreclosed from

11   litigation.  ECF No. 1 at 13.

12        The Petition then argues that mandamus is appropriate under the factors outlined in

13   *Bauman v. US. Dist. Ct*.  *Id.* at 6 (citing 557 F.2d 650, 654-55 (9th Cir. 1977)).  First, the prefiling

14   restriction challenged in this Petition has effectively barred any other means to obtain relief.  ECF

15   No. 1 at 7.  Second, Petitioner argues urgency and a risk of irreparable harm based on the rapid

16   price-slashing of the Residence via "Dutch Auction," with the seller trying to ensure it is sold

17   before Petitioner can bring suit to challenge the foreclosure and recover it.  ECF No. 1 at 5, 7, 14.

18   Third, the prefiling restriction, denial of the motion to disqualify Judge Klein, and refusal to

19   enforce the automatic stay under 11 U.S.C. § 362(a) are all clear legal errors.  *Id.* at 8.  Fourth, in

20   addition to these errors, Judge Klein's failure to liberally construe Petitioner's motion to

21   disqualify him contributes to a pattern of disregard for federal rules.  *Id.* at 9.  Fifth, both the

22   scope of a bankruptcy judge's authority to restrict civil filings and the ability of a party to obtain

23   relief when a trustee refuses to act to protect estate property are matters of first impression.  *Id.* at

24   9-10.

25        Petitioner seeks (1) disqualification of Judge Klein from future proceedings, (2) an order

26   vacating his sanctions order, (3) authorization for Petitioner to proceed with federal filings needed

27   to protect her interests in the Residence, (4) a TRO or preliminary injunction preventing the

28   auction of her personal property still in the Residence, (5) an order vacating Judge Klein's denial

1  of derivative standing, and (6) a stay on any enforcement action related to the Trustee's Deed

2  Upon Sale ("Deed") recorded for the Residence on September 13, 2024.  *Id.* at 15.

3       On August 25, 2025, Petitioner filed the TRO Motion.  The TRO Motion contends that the

4  foreclosure on the Residence stemmed from (1) federal securities law violations premised on a

5  fractionalized deed of trust, (2) a pattern of racketeering activity, (3) failure by California

6  regulators to prevent the use of fractionalized deeds of trust, (4) fraud, and (5) conflicts of

7  interest.  ECF No. 3 at 6-8.  Through the TRO Motion, Petitioner seeks an injunction against any

8  auction, transfer, disposal, or conveyance of the Residence and Petitioner's personal property, as

9  well as an order directing Respondents and the real parties in interest to preserve the status quo

10  pending further order of the Court.  ECF No. 3 at 12.

11       **C.  Motion to Proceed In Forma Pauperis**

12       Petitioner seeks to proceed in forma pauperis ("IFP").[3]  Petitioner's IFP Motion asserts

13  she is "self-employed" and earns unspecified "commissions" on transactions executed as part of

14  her work.  ECF No. 2 at 1.  It asserts that seizure of the Residence has prevented her from earning

15  any such income, but she still receives gifts for food, gas, or other essentials.  *Id.*  Assets include

16  $350 in a savings account and a passenger vehicle worth about $30,000.  *Id.* at 2.  Petitioner has

17  no regular expenses, dependents, or debts, and is living with friends and family until her eviction

18  is reversed.  *Id.*

19       **II.    LEGAL STANDARDS**

20       **A.  Mandamus Jurisdiction**

21       Common law writs of mandamus have been "abolished" in the district courts.  Fed. R.

22  Civ. P. 81(b).  However, an "exception occurs if a district judge is reviewing an order of the

23  bankruptcy court.  In that instance, the judge is acting an appellate capacity, and the All Writs Act

24  operates in aid of the district court's appellate jurisdiction."  Moore's Federal Practice 3d, §

25  204.05[2] (2024).[4]  Under the All Writs Act, a court may issue "all writs necessary or appropriate

26  _____

27  [3]  A court may authorize a person to proceed in an action without prepayment of fees if that
person "submits an affidavit that includes a statement of all assets…that the person is unable to
pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1).

28  [4]  The Mandamus Act, 28 U.S.C. § 1361, preserves another basis the exercise of mandamus

in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28

U.S.C. § 1651(a).  Five factors guide the analysis of whether mandamus relief is appropriate:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
>
> (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
>
> (3) The district court's order is clearly erroneous as a matter of law.
>
> (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
>
> (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman*, 557 F.2d at 654-55 (citations omitted).  Upon review of a petition for a writ of

mandamus, a court "may deny the petition without an answer" or "[o]therwise, it must order the

respondent [] to answer within a fixed time." Fed. R. App. P. 21(b).

**B.  Temporary Restraining Order**

A TRO is an extraordinary remedy that may only be granted if the moving party satisfies

one of two legal standards.  A plaintiff seeking a TRO must generally establish all four of the

following elements: (1) likely success on the merits of his underlying case; (2) he is likely to

suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his

favor; and (4) an injunction is in the public interest.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740

(9th Cir. 2015).  A plaintiff may also be entitled to a TRO by showing serious questions going to

the merits, irreparable harm, and a balance of equities that tips strongly in the plaintiff's favor.

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

////

////

---

jurisdiction, "grant[ing] district courts 'original jurisdiction of any action in the nature of mandamus' against a federal officer or agency." *Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021) (quoting 28 U.S.C. § 1361).  The Mandamus Act is not at issue in this action because a bankruptcy judge is not a federal officer and a bankruptcy court is not a federal agency.  *Cf. United States v. Choi*, 818 F.Supp.2d 79 (D.D.C. 2011) (U.S. Magistrate Judges exercise Article I authority subject to the supervision of the district court are therefore not executive officers for Mandamus Act purposes).

10

**III.    ANALYSIS**

**A.  The IFP Application is Granted**

Petitioner is vague as to her income, asserting unspecified amounts received both as gifts and as commissions for her work.  ECF No. 2 at 1.  Petitioner also asserts that she cannot work while evicted from the Residence.  *Id*.  She reports no regular expenses.  *Id*. at 2.  Because Petitioner reports she has no regular income and only minimal assets, her petition to proceed IFP will be granted.[5]

**B. Mandamus Relief Should be Denied**

In seeking mandamus relief, Petitioner effectively invokes this Court's appellate role in bankruptcy proceedings.  *See* Moore's Federal Practice 3d, § 204.05[2].  "Mandamus is an 'extraordinary remedy' appropriate only in 'exceptional circumstances amounting to a judicial usurpation of power' or a 'clear abuse of discretion.'"  *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004)).  Weighing the five *Bauman* factors described above, Section II.A., *supra*, "is not a mechanical analysis;" rather, the Court "weigh[s] the factors holistically to determine whether, on balance, they justify the invocation of this extraordinary remedy."  *Id*. at 1040-41.

**1.  Clear Error (Third Factor)**

Courts often begin with the third *Bauman* factor—clear error—which "is almost always a necessary predicate for the granting of the writ."  *In re U.S. Dep't of Educ*., 25 F.4th 692, 698 (9th Cir. 2022).  "The clear-error standard is highly deferential and typically requires prior authority from this court that prohibits the lower court's action."  *In re Kirkland*, 75 F.4th at 1041.  As explained below, Petitioner has not shown the Judge Klein clearly erred.

a.  <u>Bankruptcy Stay and Petitioner's Derivative Standing</u>

Petitioner first argues that the various actions taken against the Residence are void.  ECF No. 1 at 11.  She argues that under 11 U.S.C. § 362(a), Bula's Chapter 11 bankruptcy proceedings

---

[5]  Because the Court is otherwise recommending that relief be denied and this action be dismissed, Petitioner's action would not pass the screening of IFP complaints required by 28 U.S.C. § 1915(e)(2).

11

1   resulted in an automatic stay on any act to obtain possession of its property, which the foreclosure

2   proceedings violate. *Id.* She then argues that these violations were only possible because Judge

3   Klein denied her derivative standing given Mr. Dahl's appointment as trustee, despite Mr. Dahl's

4   failure to protect the estate by preventing these transfers himself. *Id.* at 5, 12.

5        The automatic stay following a Chapter 11 petition is not an absolute one. Creditors can

6   move for an annulment or modification of such stay based on, *inter alia*, the failure of a party

7   with interest in estate property to protect such interests. 11 U.S.C. § 362(d)(1). Alternatively,

8   creditors whose claims are secured by an interest in real estate can move for such relief unless,

9   within 90 days of an order granting such relief, the debtor either makes certain monthly payments

10  to the creditors or files a plan of reorganization that has a decent probability of being confirmed in

11  a reasonable time. 11 U.S.C. § 362(d)(3).

12       Judge Klein's order denying Petitioner derivative standing explains that both of these

13  circumstances applied here. Mr. Dahl was only appointed trustee after the Shareholders took no

14  action on the Chapter 11 petition in the five months since filing it, aside from hiring an attorney,

15  and after creditors had already moved for stay relief. ECF No. 1 at 55. Mr. Dahl did not oppose

16  stay relief after he examined the Residence and confirmed there was no practical source of

17  financing for necessary repairs. *Id.* at 55-56. Judge Klein also found that the Shareholders were

18  not adequately protecting the Residence (11 U.S.C. § 362(d)(1)), and that no plan of

19  reorganization was on file or in prospect (11 U.S.C. § 362(d)(3)). ECF No. 1 at 56.

20       Petitioner does not dispute either of Judge Klein's findings, show that stay relief was

21  otherwise improper, or even show that Shareholders timely opposed the stay relief motions before

22  Judge Klein granted them. Petitioner also does not dispute that none of the Shareholders took any

23  action on the Bula estate until Mr. Dahl's appointment, making it necessary. Because the stay

24  under 11 U.S.C. § 362(a) had been properly lifted, subsequent foreclosure sales and enforcement

25  actions were permitted, and Mr. Dahl did not breach his duties as trustee by not attempting to stop

26  them. Nor does Petitioner otherwise show how she could have prevented transfer of the

27  Residence if Judge Klein had found she had standing to do so.

28  ////

1          b. Prefiling Restriction

2          When granting sanctions against the Shareholders under Federal Rule of Bankruptcy

3   Procedure 9011(c)(2) in May 2025, Judge Klein ordered the Shareholders to obtain either his

4   permission or that of this District's Chief Bankruptcy Judge before filing any new case in any

5   federal court for the next two years.  ECF No. 1 at 43-44.  Petitioner argues that even a vexatious

6   litigant cannot be completely barred from access to the courts.  ECF No. 1 at 13.  One of her cited

7   cases, however, emphasized that her access can be "severely restricted" and even lists requiring

8   leave of the court before filing as one such restriction.  *Procup*, 792 F.2d at 1072, 1074.

9          Petitioner also argues that the order is unconstitutionally overbroad, was entered without

10  an evidentiary hearing, and lacks the specific substantive findings required under controlling

11  Ninth Circuit precedent.  ECF No. 1 at 12 (citing *Molski*, 500 F.3d at 1057-59).  None of these

12  appear true.  First, a potentially vexatious litigant does not need to receive an evidentiary hearing,

13  but rather "notice and a chance to be heard before the order is entered."  *Molski*, 500 F.3d at 1057.

14  Petitioner does not dispute that she had the opportunity to file an opposition to the motion for

15  sanctions filed by S.B.S., Black Horse, and Fine.  In that opposition, she also could have

16  responded to the arguments that now justify the prefiling restriction.

17         Second, Petitioner does not dispute Judge Klein's "substantive findings about the

18  frivolous or harassing nature of the [Petitioner's] litigation" in the order issuing such sanctions.

19  *See Molski*, 500 F.3d at 1057.  She does not dispute that because her lease for the Residence was

20  not negotiated at arm's length, her attempt to invoke Section 2924m was improper.  *See* ECF No.

21  1 at 29, 36-37.  She does not dispute that even after the unlawful detainer judgment in *Black*

22  *Horse Capital* precluded further challenges to her eviction, she filed multiple federal actions in an

23  attempt to reverse it.  *Id.* at 29-30, 37-40.  She openly admits having known that in doing so, she

24  blatantly ignored Judge Klein's ruling that she had no standing in any action relating to the

25  Residence or Bula, based on her belief that such a ruling was wrong.  *See supra* Section III.B.1.a.

26         This vexatious history supports the restrictions imposed by Judge Klein.  The

27  Shareholders chose to file the original bankruptcy petition in this District, despite the Residence's

28  location in the Southern District of California.  ECF No. 1 at 55.  They have since filed suit in

1  both districts, justifying Judge Klein's decision to limit filing nationwide.  *Id.* at 30, 32-33.

2  Limits on what types of actions are subject to the restriction would not be relevant when, as here,

3  Petitioner has filed multiple bankruptcy actions and civil actions and intends to continue to try

4  protecting her interest in the Residence, as in past cases.  *See id.* at 13.  If anything, it further

5  justifies Judge Klein's decision to retain authority on whether to let similar cases proceed in the

6  future.  The Petition does not demonstrate any error with Judge Klein's prefiling restrictions.

7                              c.  Disqualification

8        As a preliminary matter, Petitioner argues that Judge Klein did not fulfill his duty to

9  liberally construe the *pro se* motion to disqualify him from proceedings related to Shareholders

10  and the Residence.  ECF No. 1 at 9-10 (citing *Haines,* 404 U.S. at 520-21).  The order found that

11  28 U.S.C. § 144, which Petitioner invoked, does not apply to bankruptcy judges.  ECF No. 1 at

12  46.  Petitioner argues that Judge Klein should have still assessed this motion under 28 U.S.C. §

13  455(a), which requires any judge to "disqualify himself in any proceeding in which his

14  impartiality might reasonably be questioned."  ECF No. 1 at 10.  Petitioner also argues that by

15  ruling on the motion himself instead of referring it to another judge like she asked, Judge Klein

16  deprived her of the right to have the motion impartially adjudicated.  *Id.* (citing *United States v.*

17  *Sibla,* 624 F.2d 864, 867-68 (9th Cir. 1980)).

18        These two arguments undermine each other, particularly Petitioner's citation to *Sibla*.

19  The Ninth Circuit explicitly found that while that any legally sufficient affidavit under 28 U.S.C.

20  § 144 must be referred to another judge, "section 455 includes no provision for referral of the

21  question of recusal to another judge."  624 F.2d at 867-68.  That Judge Klein retained the motion

22  and issued the order himself suggests that he did apply the latter framework after deciding that 28

23  U.S.C. § 144 did not apply.  Additionally, even after making such a determination, he explicitly

24  acknowledged Petitioner's basis for bias – professional ties to the Bula trustee's father, a former

25  bankruptcy judge who died decades ago – before deciding it was insufficient.  ECF No. 1 at 46.

26  If Judge Klein did not formally consider the motion under 28 U.S.C. § 455, this analysis makes

27  his failure to do so a harmless error.

28

1  Petitioner reasserts and expands her prior argument that this is sufficient basis to find that

2  Judge Klein cannot be impartial.  ECF No. 1 at 10-11.  As to Judge Klein himself, she argues that

3  his repeated reliance on Mr. Dahl to deny Petitioner standing "despite a year of trustee inaction,

4  new evidence of fraud, and ongoing statutory violations" demonstrates his partiality.  *Id.* at 11.

5  She then argues that the Chief Bankruptcy Judge is part of the same "judicial lineage" as Judges

6  Dahl and Klein, giving him the same level of bias.  *Id.* at 12.  Petitioner adds that this harshens

7  her prefiling restrictions because she must "submit to review by decision-makers with an inherent

8  appearance of partiality" any action she would wish to file.  *Id.* at 13.

9  No authority supports the assertion that "judicial lineage" presumptively leads to bias and

10  partiality, let alone when such bias is imputed to run to the offspring of one of the judges.

11  Lawyers clerk for judges, and some become judges themselves years later.  Without more, this

12  cannot demonstrate that Judge Klein or the presiding Chief Bankruptcy Judge would let Judge

13  Dahl's specter influence their decisions just because his son, who is a trustee, is involved in the

14  case.  Petitioner has not shown clear error as to the disqualification ruling.

15  ### 2.  Alternative Means of Relief (First Factor)

16  "The availability of relief through the ordinary review process weighs against granting

17  mandamus relief."  *In re Kirkland*, 75 F.4th at 1048.  A litigant can appeal "final judgments,

18  orders, and decrees" of a bankruptcy judge to the district court or the Bankruptcy Appellate Panel

19  ("BAP").  28 U.S.C. §158(a)(1).  "[A] party may" also "seek leave to appeal an interlocutory

20  bankruptcy court order from (1) the district court, or (2) 'with the consent of all the parties,' from

21  the BAP."  *In re Kirkland*, 75 F.4th at 1048-49 (quoting 28 U.S.C. § 158(a)(3), (b)(1)).  Petitioner

22  has apparently not sought to appeal any of Judge Klein's orders that she collaterally attacks here.

23  Moreover, there is no reason to believe that the alleged errors could not have been fairly

24  addressed on appeal.  A petition for a writ of mandamus is not to be used "as a substitute for the

25  regular appeals process."  *Cheney*, 542 U.S. at 380-81.

26  ### 3.  Other *Bauman* Factors and Conclusion of *Bauman* Analysis

27  The second factor—that Petitioner will be harmed in a way not correctable on appeal—

28  arguably weighs in her favor, given that the Residence could imminently be resold.  However, the

1   fourth and fifth factors weigh against mandamus relief.  The fourth factor is not present because

2   this case does not present an often-repeated legal error.  The fifth factor is not present because

3   this case does not raise an important issue of first impression, such as how to construe a

4   procedural rule in a new context.  *See In re Kirkland*, 75 F.4th at 1047.  In summary, four of the

5   five *Bauman* factors weigh against Petitioner.  Most significantly, mandamus relief is

6   inappropriate because Petitioner has not shown clear legal error.

7       **C. Merits of the TRO Requests**

8       Petitioner has effectively requested two TROs.  One is embedded in the Mandamus

9   Petition itself.  ECF No. 1 at 14-15.  The second is set out in her separately filed TRO Motion.

10  ECF No. 3.  Both TROs in substance seek to stop the sale of the Residence and Petitioner's

11  personal property.  There are at least two reasons why a TRO should not issue.  First, the entities

12  against whom Petitioner seeks a TRO are not parties to this action.  Second, Petitioner has not

13  shown serious questions going to the merits.

14      **1.  TRO Relief Against Non-Parties is Inappropriate**

15      Petitioner filed this mandamus action against the Bankruptcy Court and Judge Klein.  Yet

16  Petitioner's TRO requests seek to stop the sale of the Residence and her personal property

17  through an injunction against Black Horse Capital, Fine Capital Investments, and other unnamed

18  entities asserting title or auction rights as to the Residence or her personal property.

19      Courts cannot issue orders binding anyone but a party to the current civil action because

20  "jurisdiction is limited to those over whom it gets personal service, and who therefore can have

21  their day in court."  *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023).  Although a court may

22  enjoin named defendants from taking specific unlawful action, it cannot "lawfully enjoin the

23  world at large[.]"  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021).  After an

24  injunction enjoins a party, for example, non-parties can only be punished for contempt if they are

25  either "'legally identified' with the enjoined party or 'abet' the enjoined party's violation of the

26  injunction."  *Havens*, 76 F.4th at 111 (citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d

27  Cir. 1930)).

28

The Mandamus Petition initiating this action names this District's Bankruptcy Court as a Respondent and Judge Klein as a Real Party in Interest.  ECF No. 1 at 1.  Petitioner's TRO motion is the first filing in this action to identify Black Horse, Fine, and "related entities asserting title of auction rights" to the Residence, and Petitioner's personal property therein, as Real Parties in Interest.  ECF No. 3 at 1.  Petitioner has not amended her Petition to include any entity claiming interest in the Residence as a Respondent or Real Party-in-Interest, nor to explain under what cause of action this court can hold them directly accountable.  She cannot do so through a TRO application alone, which does not constitute a pleading.  *See* Fed. R. Civ. P. 7(a).  Nor would any transfer of the Residence between Black Horse, Fine, and similar entities abet any purportedly unlawful action by Judge Klein in sanctioning Petitioner or denying her motion to disqualify him from bankruptcy proceedings.  *See* ECF No. 1 at 8-9.

Petitioner asserts via declaration that she provided notice to the entities at issue by serving them with the TRO Motion and related documents via certified mail.  ECF No. 3 at 15-16.  She argues that this satisfies the requirements under Fed. R. Civ. P. 65(b)(1)(B) and related Local Rules for issuing a TRO without written or oral notice.  ECF No. 3 at 10-11.  Rule 65 governs the notice that must be given to "the adverse party or its attorney" prior to an application for a TRO or preliminary injunction.  It does not, however, turn those non-parties into parties to this Mandamus Petition against the Bankruptcy Court and Judge Klein.

Petitioner's TRO motion requests relief against non-party entities the Court cannot lawfully enjoin.

### 2.    Petitioner Has Not Shown Serious Questions Going to the Merits

Petitioner is correct that the risk of losing real property, like the Residence, is a sufficient form of irreparable harm when considering whether to grant a TRO.  ECF No. 1 at 5, 7, 14; *Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011).  However, Petitioner's vague and conclusory allegations about legal violations fail to make a sufficient showing on the merits of her claims to warrant the issuance of a TRO.  *See Bouyer v. IndyMac Fed. Bank*, 2009 WL 1765668, at *2 (N.D. Cal. June 18, 2009) (denying motion for a temporary restraining order to stop a foreclosure auction where plaintiffs alleged "very few

specific facts in their complaint," instead presenting "conclusory allegations"); *Holcomb v. California Bd. of Psychology*, 2015 WL 7430625, at *5 (E.D. Cal. Nov. 23, 2015) (denying motion for a TRO where the "Complaint and Motion ... provide vague, conclusory allegations, rather than specific facts or evidence" as to a certain claim and fail to provide "sufficient information for the court to evaluate [plaintiff's] remaining theories").

Petitioner argues that the foreclosure "arose from a scheme involving fractionalized deeds of trust" that double as "investment contracts." ECF No. 3 at 6-7 (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)). She asserts that foreclosure of the house stripped the equity thereof to deliver return to these fractional investors, in violation of securities law. ECF No. 3 at 7. Petitioner fails to articulate how the fractionalized deed of trust is relevant to the harm she purportedly faces. The deed of trust that divided interest in the Residence among Black Horse, Fine, and other entities resulted from its foreclosure rather than causing it. *See* ECF No. 1 at 28, 49-50. Specifically, the sale of the Residence which led to the Deed at issue occurred after a trustee was appointed over Bula's bankruptcy estate and the automatic stay was lifted. *Id.* at 28, 55-56. Petitioner fails to explain how such fractionalization is relevant to her efforts to preserve her interest in the Residence.

Petitioner also fails to specify which securities laws were allegedly violated. Petitioner only cites *W.J. Howey*, without explanation. But *W.J. Howey* was an action initiated by the SEC to restrain sales of "units in a citrus grove development coupled with a contract for cultivating, marketing, and remitting the net proceeds to the investor." 328 U.S. at 294. *W.J. Howey* does not show that each time a deed is fractionalized it becomes a security subject to registration and other regulation under federal securities laws.

Petitioner then argues that the conduct of the title holders constitutes racketeering under 18 U.S.C. §§ 1961-1968. *Id.* But that claim is completely unsubstantiated. To prove a civil RICO claim, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996) (citation omitted). Petitioner

1    makes only general allegations without specific evidentiary support concerning alleged

2    racketeering.

3         Petitioner then claims "Insider Conflicts of Interest" because one of the fractionalized

4    deed of trust holders was also the CEO of the loan servicer, escrow agent, and originator.  ECF

5    No. 3 at 7 (citing *In re. Madera Farms P'ship*, 66 B.R. 100 (B.A.P. 9th Cir. 1986).  She argues

6    that this conduct is part of a larger pattern of fraud, misrepresentation, predatory lending

7    practices, and licensing violations for which the California Department of Real Estate ("DRE")

8    has investigated the Real Parties in Interest.  ECF No. 3 at 7-8.  Aside from her own declaration

9    repeating these allegations (*Id.* at 15), Petitioner submits no evidence of the insider connection or

10   of past DRE investigations.  Nor does she explain what the fraud is or how it might have affected

11   her in particular.

12        Moreover, as to her personal property, Petitioner was given an opportunity to reclaim that

13   property before August 4, 2025.  In a letter dated July 15, 2025, she was told she could either

14   claim the stored property or reimburse the current owners for reasonable storage costs to avoid its

15   disposal.  ECF No. 3 at 23.  If she decided not to reclaim her property after receiving that notice,

16   that further undermines her claim to have been legally harmed.

17        Because Petitioner has not shown serious questions going to the merits, the Court need not

18   evaluate the remaining equitable relief factors.  *See Martin v. Int'l Olympic Comm.,* 740 F.2d 670,

19   675 (9th Cir. 1984) (declining to grant injunction on remaining factors where the plaintiff failed

20   to show at "an irreducible minimum that there is a fair chance of success on the merits").

21   **IV.    VIOLATION OF THE BANKRUPTCY COURT'S SANCTIONS ORDER**

22        Through this action, Petitioner has sought not only the review of Judge Klein's sanctions

23   order through mandamus, but also to undermine the effectiveness of prior court rulings

24   concerning the Residence and to stop any further sale concerning the Residence and Petitioner's

25   other property.  Judge Klein's sanctions order, which Petitioner never appealed, prohibits, without

26   prefiling permission, Petitioner from "filing any new case or adversary proceeding in any federal

27   court venue within two years[.]"  ECF No. 1 at 43.  Judge Klein stated that, "[f]uture

28   transgression of the prefiling requirement will be treated as contempt."  *Id.* at 44.  The instant

1   action would appear to be precisely the type of action Judge Klein sought to "deter." *Id*. at 41.

2   However, the Court leaves for Judge Klein to determine in the first instance whether Petitioner

3   has engaged in contempt and whether further sanctions are warranted.  Petitioner shall file a

4   notice on the docket of Bankruptcy Case No. 23-24619 concerning the entry of this Order and

5   Findings and Recommendations.

6       A further word of admonition: Plaintiff suggests in her TRO Motion that there is diversity

7   jurisdiction for this Court to hear a civil action against one or more of the holders of title to the

8   Residence.  ECF No. 3 at 10.  If Petitioner refiles such an action in the wake of the instant action

9   being dismissed, this Court might then issue its own Order to Show Cause as to why she should

10  not be sanctioned for violating Judge Klein's sanctions order.[6]

11                              **V.      CONCLUSION**

12      Petitioner has been afforded ample opportunities to present her case in various forums.  If

13  Petitioner seeks relief from Judge Klein's orders, the judgment of the state court, or the judgment

14  of the Southern District of California, she must seek it in those forums or on appeal from the

15  relevant orders or judgments.  Upon review of a petition for a writ of mandamus, a court "may

16  deny the petition without an answer[.]"  Fed. R. App. P. 21(b).  The instant Mandamus Petition

17  should be dismissed.

18      **IT IS HEREBY ORDERED** that:

19      1.  Petitioner's application to proceed IFP (ECF No. 2) is **GRANTED**; and

20      2.  Petitioner shall file a notice of this Order and Findings and Recommendations on the

21          docket of Bankruptcy Case No. 23-24619 in U.S. Bankruptcy Court for the Eastern

22          District of California; and

23      **IT IS HEREBY RECOMMENDED** that:

24      1.  Petitioner's Petition for Writ of Mandamus and Request for Emergency Relief (ECF

25          No. 1) be **DENIED**;

26      2.  Petitioner's Motion for a Temporary Restraining Order (ECF No. 3) be **DENIED**; and

27

28  [6]  It is also not clear how venue for a generic civil action against the title holders would be proper in this District.  *See* 28 U.S.C. § 1391(b).

                                        20

1       3.  That this action be dismissed and this case be closed.

2       These findings and recommendations will be submitted to the United States District Judge

3 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen days**

4 after being served with these findings and recommendations, plaintiff may file written objections

5 with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

6 and Recommendations."  The plaintiff is advised that failure to file objections within the specified

7 time may result in waiver of the right to appeal the District Court's order. *Martinez v. Ylst*, 951

8 F.2d 1153 (9th Cir. 1991).

9

10 DATED: August 29, 2025

11

12       SEAN C. RIORDAN
           UNITED STATES MAGISTRATE JUDGE